## MITCHELL VS. MOORE.

REPORTS OF SUPREME COURT: *Reporter controls printing of.*
> The control of the printing of the Supreme Court Reports belongs to the Reporter, subject to the approval of the Governor, Auditor and Treasurer, and not to the Commissioners of Public Printing.

APPEAL from *Pulaski* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.
*U. M. Rose*, for appellant.
*John Fletcher*, for appellee.

### STATEMENT.

EAKIN, J. Appellant filed in the circuit court a petition for a mandamus, against Moore, as Reporter, stating:

That the state board of commissioners, whose duty it was to superintend the letting of public contracts, in September, 1878, awarded to W. D. Blocher the public printing for two years from the first of January, 1879; that

Blocher died, and, afterwards, in December, 1879, petitioner was, by the board, substituted in his place; that in July, 1880, he made with said board another contract to do the printing for the two succeeding years.   That defendant is the Reporter of this court, and has in his hands manuscripts of its decisions ready to be printed as the thirty-fourth volume of Arkansas Reports, and refuses to deliver them to petitioner.   He prays that he may be ordered to do so.

The defendant, in answer, claims the power of letting and superintending the printing and binding of the reports, and says that he has contracted therefor with another company, which contract has been approved by the governor, auditor and treasurer of the state; and that the printing and binding of said volume of reports is not embraced in petitioner's contract with the board of commissioners.

A demurrer to this answer was overruled.   Petitioner rested, and, the writ being refused, appealed.

### OPINION.

The contracts being admitted, the only question is, as to the power of the Reporter to let and superintend the printing of the reports.

The public printer was formerly a bonded officer, elected by the general assembly.   (*Gould's Digest, ch. 137, secs. 1 and 2.*)   As such, it was made his duty to print the decisions of the supreme court.   (*Ib., ch. 146, secs. 10 and 11.*) There can be no doubt that it was considered such work as would be public printing.

The constitution of 1868 (*Art. V, sec. 15*) authorized the legislature to prescribe, by law, the manner in which the state printing should be executed.   Whereupon, by act of 1869, it constituted a board of public printing, to be com-

posed of the governor, secretary of state, treasurer, and one member to be chosen by each house, with full powers to make any and all contracts respecting the public printing of the state. (*Gantt's Digest, secs. 4879–80.*) This act, in effect, abolished the former statutory office of public printer, and vested all power as to the Reporter in the board. It continued to be the habit to designate the person, with whom the contract was made, as public printer, although he was only an employee of the board.

Such was the law at the adoption of the constitution of 1874, which continued the office of Reporter, without any designation of his duties (*Art. VII, sec. 7*), and provided that all printing, etc., should be done under contract, with the lowest responsible bidder, below such maximum price and under such regulations as might be fixed by law; said contracts to be subject to the approval of the governor, auditor and treasurer. (*Ib., Art. XXX, sec. 15.*) In accordance with this section, by act of November 28, 1874, the general assembly made the governor, auditor and treasurer a board of commissioners, and empowered them to let, to the lowest bidder, for the term of two years, contracts for all the printing and binding, of whatever description or character, required for the use of all the departments of the state government. These powers evidently included the reports. With regard to them, however, a change of policy seems to have soon become desirable; and the same general assembly, by a special act for the purpose, December 14, 1875, empowered the Reporter, and made it his duty when he had sufficient copy to make a book of 600 pages, to contract for its printing and binding, with the lowest responsible bidder, such contract to be approved by the above-named officers. This act was doubtless prompted by the consideration, obvious to all, that the Reporter was

best able to judge of the kind of work to be done and the style of its execution; and was peculiarly qualified, by virtue of his legal education and professional experience, for that careful supervision of the work, so essential to prevent misleading errors which might disturb the due administration of justice throughout the state. The board of commissioners were, in other respects, left in full possession of all their powers conferred by the act of November 28, 1874. These were very extensive, embracing many other matters besides the public printing, and all of that, save the reports. Such was the law when the contract for public printing was made with Blocher, for whom petitioner was substituted, in 1879. He can not have greater rights than Blocher had, and, therefore, no right under that contract to claim the printing of the reports.

This decides the case. Petitioner is still acting under the contract with Blocher. But as the new contract, which he, himself, made with the board, in July, 1880, will soon come into operation, and is brought to our notice in the petition, it is of public importance to avoid delays in getting out the reports, that we determine its scope and effect.

It is contended that an act of March 11, 1879, restored to the commissioners the control of the printing and binding of the reports. It will be remembered that said board had been left with a large residue of powers regarding the public printing, the great mass of it being still under their control. The first section of the act directs and requires them, "in giving out the contracts for all public printing required by law to be done," to advertise and receive bids for the governor's message, reports of the auditor, treasurer, secretary of state, attorney general, commissioner of the state lands, receiver of the Real Estate bank, superin-

Mitchell vs. Moore.

tendent of public instruction, officials of the penitentiary, the State Industrial university, and other heads, on to eighteen in number, closing with "all other public printing of every character and description required to be done and not embraced within either of the above-named classes."

The next section requires the board to let to the lowest bidder; and the next section, and last, repeals all laws in conflict with it.

The act does not, in terms, give the board any new powers, but seems rather intended to regulate those it had. The printing of the reports is not enumerated amongst the classes, in a list which seems to have been intended to be exhaustive, although the last clause was properly inserted to cover any other kinds of printing within their vested powers which might have been omitted.

Considering the special care which the legislature had formerly taken to separate the printing of the reports from all other printing, and take it from the board, it is not reasonable to suppose that it would have been omitted from the enumeration of classes of powers which were being then only regulated, not conferred. In the wide range of public printing, there is enough of detail to make the concluding clause proper, without drawing in the printing of the reports.

Acts *in pari materia*, explain each other. From the review of legislation on this subject, it appears clear that the control of the printing of the reports rests with the Reporter, subject to the approval of the governor, auditor and treasurer.

The demurrer reaches back to the petition, which shows no grounds for the mandamus.

Affirm the judgment.